JEFFREY B. SETNESS
Nevada Bar No. 2820
KATHLEEN BLISS
Nevada Bar No. 7606
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
702.893.3383
FAX: 702.893.3789

Attorneys for Defendant Henri Wetselaar, M.D.
and David A. Litwin

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HENRI WETSELAAR, M.D.,<br>DAVID A. LITWIN, and<br>JASON C. SCOTT, R.PH.,<br><br>Defendants. | CASE NO. 2:11-CR-00347-KJD-CWH<br><br>**DEFENDANTS' REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR DISCOVERY** |

Defendants Henri Wetselaar, M.D. and David Litwin, through their undersigned counsel, hereby certify that this Reply is timely filed in accordance with Local Rule 12-1(c).

**DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY**

Defendants show this Court that the government has not fully complied with its discovery obligations in that the government's application of those obligations fails to meet the standards for a fair trial as mandated by *Brady v. Maryland*, 373 U.S. 83 (1963), *Smith v. Cain*, 132 S.Ct. 627 (2012), *United States v. Price*, 566 F.3d 900 (9th Cir. 2009), *United States v. Acosta*, 357 F.Supp. 2d 1228 (D. Nev. Jan. 28, 2005), and Nevada Rule of Professional Conduct 3.8. The government misapprehends its obligations by acknowledging only two precepts relative to its discovery obligations. First, the government seemingly contends that it can decide in a vacuum whether the

4823-1001-9603.2

information in its possession is favorable to the defense.  Second, the government maintains that it can shrink its duty to favorable information related solely to the government's case-in-chief.  The United States Constitution requires more.   *Brady* and its progeny require disclosure of all favorable information to a defendant with regard to guilt and punishment. *See Price*  Section 66 F.3d at 900; *Acosta* 357 F.Supp.2d at 1228.  The courts have never limited the government's obligations to information that pertains only to the government's case-in-chief, and the government cites no authority in support of this notion.  Moreover, the Rule 3.8 of the Nevada Rules of Professional Conduct, adopted by this District at LR IA 10-7, requires a prosecutor to provide timely all information that tends to negate the guilt of the accused or that mitigates the offense.   Defendants have never asserted that Department of Justice policy creates a substantive right for defendants; rather, it is a code of conduct in and of itself that prescribes good behavior and proscribes bad behavior for prosecutors as they attempt to discharge their serious duties under the United States Constitution.  Therefore, consistent with *Acosta* and *Price*, the court should order the government to comply with defendants' specific discovery requests, as these requests seek material information necessary to a *fulsome* defense, as opposed to a "fulsome" body of certain papers provided by the government. (Opposition, Doc. 83, at 1).[1]  Furthermore, because defendants' preparation of their case centers on the complexities and nuances of practicing medicine and operating a medical practice, pretrial disclosure is necessary at this stage, especially

---

[1] The government states that it has provided 26,000 pages of discovery.  This is good.  However, according to the grand jury testimony of case agent Kendra Still, the government seized 1,900 patient files.  Agent Still further testified that the cooperating defendants, particularly Melissa Salaices and Carol Allen "coached" patients.  Defendants have no interviews obtained by the government of these "coached" patients.  The government's expert, Steven Richeimer, examined only 238 patient files.  It appears as though he only examined government summaries of those files, which is information that defendants need, as well as a list of physicians who disagreed with the government's theory of presumably "substandard" medical practice equating with criminal conduct.



4823-1001-9603.2                                 2

1  given the voluminous discovery, which includes patient records, prescriptions and billing
2  statements, and much of which is pending disclosure.  Therefore, defendants respectfully request
3  that this Court order the government to disclose the items at issue within 30 days of this Reply.  In
4  support of their Reply, defendants submit the following points and authorities.
5        DATED this 10th day of May 2013

                                LEWIS BRISBOIS BISGAARD & SMITH LLP


                                By   /s/ Jeffrey B. Setness and /s/ Kathleen Bliss
                                     JEFFREY B. SETNESS
                                     Nevada Bar No. 2820
                                     KATHLEEN BLISS
                                     Nevada Bar No. 7606
                                     6385 S. Rainbow Boulevard, Suite 600
                                     Las Vegas, Nevada 89118
                                     Tel. 702.893.3383

                                     Attorneys for Defendant Henri Wetselaar, M.D.
                                     and David A. Litwin

**POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In its Opposition, the government narrows its discovery obligations, completely ignoring the holdings in *Smith v. Cain*, *Price*, and *Acosta*. The government seemingly limits its obligations to its case-in-chief, thereby ignoring the direction and breadth of the investigation that it conducted. However, the Supreme Court has made it abundantly clear that the government's discovery obligations do not rest within a vacuum, limited to unfettered discretion by the government. *See Kyles v. Whitley*, 540 U.S. 419, 433-438 (1995). In the instant case, the government's discovery obligations necessarily include information about the conduct of its agents and informants during its lengthy investigation of a well-established medical practice. The government's discovery obligations necessarily include communications with other agencies and medical practitioners as the government ultimately contracted its investigation. The government's discovery obligations necessarily include the government's motives (certainly its informants) in targeting Dr. Wetselaar. Such information, like the background and motives of informants, as well as their relationships to the agents, represents an integral part of a defense in this type of case where "unnecessary" medical treatment is alleged. Therefore, the items identified in the Motion must be disclosed timely, as each one is crucial to preparation of the defense.[2] Defendants note

---

[2] Defendants show this Court that the government overly condensed defendants' discovery requests in its Opposition. For the Court's convenience, the twelve items as originally stated in Defendants' Motion are as follows:

(1) The rough notes, text messages and electronic messages of all law enforcement working on this case.

(2) All confidential informant files, including all information concerning the status of any paid informant used during the investigation herein and said informant's involvement in any other criminal investigation; full benefits and promises received in exchange for cooperation; the full extent of each informant's assets; and the status of each informant's tax liability.

(3) All impeachment evidence, as contemplated by *Giglio v. United States*, 405 U.S. 150 (1972).

(footnote continued)



4823-1001-9603.2                                    4

that the government has provided the grand jury transcript of Agents Robert Erickson and Kendra Still, so Request 6 has been satisfied. Moreover, there are outstanding discovery requests that the government seems to have acknowledged it must produce.[3]

---

    (4) All evidence the government intends on offering in its case-in-chief at trial.

    (5) All communications, recorded or reported, between any task force member investigating this case, including the undercover agent, and any confidential informant used in this investigation.

    (6) Grand Jury testimony made in seeking the return of indictment herein.

    (7) Any and all communications, in any format, made with the media and press concerning this case.

    (8) All evidence or information, including rough notes, law enforcement personnel files and oral communications, known to the prosecution team, as defined by USAM 9-5.001, that tends to negate the guilt of the Defendant or mitigates the offense, as provided by Rule 3.8 of the Nevada Rules of Professional Responsibility and as adopted by Local Rule IA 10-7.

    (9) All communications, in any form, between the prosecution team and the Nevada Attorney General's Office regarding review of any patient files held by Defendants on behalf of any and all patients.

    (10) All communications, in any form, between the government and prior defense counsel, Robert Draskovich and John Turco.

    (11) All communications with any expert witness who declined to offer an opinion regarding the government's theory of the case.

    (12) A list of all other physicians and medical practitioners for whom pharmaceutical records were pulled.

[3] List of pending documents from the government:

1. David KUTZ (Jason's brother) took three thumb drive memory sticks from Jason KUTZ during summer 2010. The blue memory stick was taken in June 2010. The silver and black sticks were taken in late July or early August 2010. Each memory stick contains information regarding the prescription fraud scam and/or the tax return scan. The memory sticks were sealed in a 1A envelope for retrieval and retention purposes, as well as possible exploitation by computer forensic examiners. FBI_000027.

2. Lams Logbook that records OxyContin dispensed by Lams Pharmacy as outlined in the interviews of Terry Cater LAM_008733, Jason Smith LAM_019413, Teresa Whaley LAM_019436, and Linda Hart LAM_019430.

3. All medical records seized during the search warrant(s) retained and stated are
(footnote continued)

## II. GOVERNMENT'S BRADY OBLIGATIONS

*Brady* requires the disclosure of evidence favorable to the defense as to guilt and punishment, and that the evidence is material. *Brady v. Maryland*, 373 U.S. at 87. If the mere likelihood that a different outcome could have occurred is great enough to undermine confidence in the outcome, then the evidence is material. *Smith v. Cain*, 132 S.Ct. at 630. Furthermore, as the government admits, material evidence must be viewed by its "net effect," under the totality of the circumstances. (Doc. 83, at n2, quoting *Kyles,* 540 U.S. at 437-38). Defendants submit that each of the specific items enumerated in their Motion contains information favorable to their defense; and if any of these items are withheld, particularly as the items concern the conspiracy charge, it is likely that the outcome at trial or at sentencing would be different. In other words, a jury needs to know what motivated anonymous tipsters and snitches used by the government when it decided to target Dr. Wetselaar.  A jury needs to know why the government seized every single patient file

---

relevant by

the government to support prosecution as stated in letter from Crane Pomerantz dated January

11, 2013.  Note that these records were reviewed and summarized by the government.

4. All receipts and financial records generated by Dr. Wetselaar's office, including hand-written receipts for payments made to Dr. Wetselaar, super-bills, or any other billing documentation relating to the services rendered to patients by Dr. Wetselaar and/or New Amsterdam Medical Group.

5. An index of the discovery previously produced including discovery relating to the financial crimes involving IRS allegations (money laundering / structuring).  See, part of this request was promised by Crain in his letter dated January 11, 2013.

6. Copy of all original prescriptions that were presented under Dr. Wetselaar's name, including any and all prescriptions allegedly forged by David Litwin, written and/or signed by Dr. Wetsleaar.

7. Copy of all prescriptions generated by Lam's Pharmacy (typed) for Dr. Wetselaar's signature/approval while Dr. Wetselaar was out of the office.

8. Color copies of all photographs previously produced in black and white.

9. Pre-Sentence Investigation Reports of Jason Kutz, Carolyn Allen and Melissa Salaices.

10. Any and all materials from LVMPD in the government's possession, including reports and witness statements pertaining to Dr. Wetselaar, David Litwin, and/or New Amsterdam Medical Group.

from Dr. Wetselaar's clinic, and then turned over files to the Nevada Attorney General for review, which ultimately went nowhere. A jury needs to know in what format the government's expert witness reviewed patient files and why the government provided those files for review. It follows that a jury needs to know who and how many experts the government shopped before it decided to use the one it chose. Since this case was trumpeted as a significant matter in the press, a jury needs to know how the investigation was internally characterized, as it shows government motive and bias in targeting Dr. Wetselaar and not other physicians who maintain a similar practice.

### III.   GOVERNMENT'S OBLIGATIONS PURSUANT TO NRPC 3.8 AND LOCAL RULE 1A 10-7

*Acosta* addressed the very issues here: pretrial disclosure obligations set forth by *Brady*, as adopted by the Nevada Rules of Professional Conduct 3.8, require prosecutors practicing in Nevada federal court to:

> (d) Make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal[.]

The *Acosta* Court analyzed at length the duties imposed by Rule 3.8, concluding that Rule 3.8 broadens a prosecutor's pretrial disclosure duties. *Acosta*, 357 F.Supp. 2d at 1232-33. In *United States v. Price*, the Ninth Circuit, "note[d] favorably" the *Acosta* analysis, as follows:

> For the benefit of trial prosecutors who must regularly decide what material to turn over, we note favorably the thoughtful analysis set forth by two district courts in this circuit:
>
>> [T]he 'materiality' standard usually associated with Brady . . . should not be applied to pretrial discovery of exculpatory materials. . . . [J]ust because a prosecutor's failure to disclose evidence does not violate a defendant's due process rights does not mean that the failure to disclose is proper. . . . [T]he absence of prejudice to the defendant does not condone the prosecutor's suppression of exculpatory evidence [ex ante]. . . . [Rather,] the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses. . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made. . . . [T]he government [should therefore] disclose all evidence relating to guilt

> or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence.

*Price*, 566 F.3d at 913 (citing *Acosta*, 357 F.Supp. 2d. at 1239-40) (internal citations omitted).

While the government acknowledges its disclosure "discretion" (Opposition, Doc. 83, at 2:21-26), it does not then show how it has carried its "corresponding burden" (*Id*. at 2:24). The government fails to demonstrate compliance with Rule 3.8, as required under this Court's Local Rule IA 10-7, or that it has complied with the constitutional obligations imparted by *Brady* and its progeny, including *Kyles*, which requires disclosure of information that is favorable to defendant with regard to guilt and punishment. The government instead asserts that what it has not disclosed falls into one of the following three categories: (1) evidence that is immaterial "in the sense that it will not be used in the United States' case-in-chief," or (2) that "does not relate to the subject matter of a witness' testimony[,]" or (3) that "will not undermine confidence in the outcome of the trial[.]" (Opposition, Doc. 83, at 2:11-14) (numeration added). The government seems to conclude that each request necessarily falls into one of those categories because if the request were for something discoverable, the government would have already turned it over. Even if this were an accurate summary of materiality (which defendants contend it is not), not one of the government's request-specific arguments addresses the "corresponding burden" of discretionary disclosure by the prosecution team. *See Kyles,* 514 U.S. at 437-38 (noting that the government has a "degree" of discretion but that, as its consequent responsibility must "gauge the likely net effect of all [favorable] evidence and make disclosure when the point of 'reasonably probability' is reached").

For example, the government refuses to produce informant files except for those it anticipates it will call at trial. (Opposition, Doc. 83, at 19-20). However, by this approach the government could simply veil the warts of its investigation by charging around its corrupt informants. *See Berger v. United States*, 295 U.S. 78, 88 (1935) (The U.S. Attorney's "interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). Here, the informants' involvement is a key component of the defense in that the investigation seemingly started with anonymous tipsters (disgruntled former patients discharged by Dr. Wetselaar?) and burgeoned into cooperating informants with significant criminal histories who

1  clearly have a stake in the outcome of this case.  Thus the materiality of the government's
2  confidential informant files has little to do with whether the government categorizes these
3  informants as percipient witnesses but everything to do with the scope and breadth of this
4  investigation.  Indeed, governmental misconduct, which includes mismanaged cooperators or
5  incredulous, unsubstantiated snitches, surely undermines confidence in the outcome of a trial.

6  　　　　The government oversimplifies the holding of *United States v. Brodie*, 871 F.2d 125 (D.C.
7  Cir. 1989), by stating it supports the argument that the government does not have to reveal the
8  identities of the confidential informants.  Instead, *Brodie* stands only for specificity in a
9  defendant's request.  In *Brodie*, "defense counsel declined the trial court's invitation to elaborate
10 on whether Brodie's need for the informant's testimony was enduring," once two of the counts
11 against the defendant had been dismissed. *Id*. at 128. Thus, the trial court did not abuse its
12 discretion by not inquiring further into defendant's "generalized assertion" that the identity of an
13 informant would help the defendant. *Id*. *Brodie* does not establish, therefore, that participation in a
14 charged transaction is a threshold for confidential informant disclosure.  Materiality thus exceeds
15 mere percipience of a charged transaction by a confidential informant.

16 　　　　Finally, the government argues that because it has "no intention of calling either CI as a
17 witness at this juncture, *Giglio* does not mandate the disclosure of any benefits they received."
18 (Response, Doc. 83, at 4:9-10). Again, while *Giglio* mandates disclosure of impeachment
19 evidence, defendants' request is premised on more than *Giglio* and seeks more than just the
20 benefits received by some confidential informants.  Pursuant to *Brady* and Rule 3.8, defendants
21 seek the government's confidential informant files because defendants believe they contain
22 information that is favorable to all stages of its defense, including defense theories of medical
23 necessity, bias, false accusations, entrapment, and sentencing entrapment.  Furthermore, and fatal
24 to the government's argument against disclosure, is that an alleged conspiracy forms the
25 government's center-piece charge. ("Beginning at a date unknown, and continuing to in and
26 around August 2010, the defendants worked together to distribute large amounts of highly
27 addictive prescription drugs in and around Las Vegas." Indictment 1:21-23, Sept. 21, 2011,
28 Docket No. 4).  The breadth of the conspiracy charge belies the government's argument that the



4823-1001-9603.2　　　　　　　　　　　9

confidential informants were not present at any of the charged transactions or at least involved in those transactions. Disclosure of the government's confidential informant files is therefore necessary under *Brady* and Rule 3.8 because governmental action throughout the entire investigation, not just during the charged transactions, is a crucial component of the defense of this matter.

## IV.   CONCLUSION

For the above reasons and those stated in their Motion (Docket No. 66), Defendants Henri Wetselaar, M.D. and David Litwin respectfully request this Court to grant their Motion for Discovery and Order the government to disclose the requested items within thirty days.

DATED this 10th day of May 2013

LEWIS BRISBOIS BISGAARD & SMITH LLP

By  /s/ Jeffrey B. Setness and /s/ Kathleen Bliss
JEFFREY B. SETNESS
Nevada Bar No. 2820
KATHLEEN BLISS
Nevada Bar No. 7606
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Tel. 702.893.3383

Attorneys for Defendant Henri Wetselaar, M.D. and David A. Litwin

## CERTIFICATE OF SERVICE

In accordance with Rule 49(c) of the Federal Rules of Criminal Procedure and Rule 47-11 of the Local Rules of Practice of the United States District Court for the District of Nevada, I certify that I am an employee of LEWIS BRISBOIS BISGAARD & SMITH LLP, and that on this 10th day of May 2013, I did cause a true copy of:

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY**

to be served via electronic service by the U.S. District Court CM/ECF system to the parties on the Electronic Filing System in this action.

By: */s/ Crystal Marshall*
An Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP