# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff , | Case No. 2:11-CR-00347-KJD-CWH |
| v. | **ORDER** |
| HENRI WETSELAAR, M.D., | |
| Defendant. | |

Presently before the Court are Defendant Henri Wetselaar's Motion for Release Pending Sentencing (#458), Motion for Acquittal, or in the Alternative, Motion for New Trial (#463), and Motion for Hearing Pursuant to Rule 32.2(b)(1)(B) (#485). Also before the Court is Defendant David Litwin's Motion for Joinder (#466) to Defendant Wetselaar's Motion for Acquittal, or in the Alternative, Motion for New Trial (#463). The Government responded in opposition (##474, 476) to which Defendants replied (##475, 477). Finally, before the Court is Defendant Litwin and Defendant Wetselaar's Joint Motion for Return of Property (#460). The Government responded in opposition (#471), to which Defendants replied (#472).

**I. Motion for Release Pending Sentencing**

Having read and considered the motions and the factors in 18 U.S.C. § 3142(g), the Court finds that Defendant Wetselaar has failed to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of any other person or the community. See 18 U.S.C. § 3142 (e), (f); 18 U.S.C. § 3143 (a)(2). For instance, on December 9, 2016, Defendant Wetselaar

filed a notice to the Court stating that he was no longer seeing patients (#349) which stated as follows:

> COMES NOW, Defendant Henri Wetselaar, M.D. (hereinafter "Dr. Wetselaar"), by and through his counsel Jeffrey B. Setness of the law firm of Fabian VanCott, and hereby notifies the Court that Dr. Wetselaar is no longer seeing patients.

However, on March 1, 2017, counsel for Wetselaar, became aware that he was seeing patients in January and February 2017 despite having previously filed a signed declaration from Dr. Charles Bernick stating that he was found to have Alzheimer's Disease, short-term memory impairment, and other cognitive impairments.

Furthermore, the Court finds that Defendant Wetselaar has failed to show "exceptional reasons" why detention would not be appropriate. 18 U.S.C. § 3145(c). The Ninth Circuit has discussed what could constitute exceptional reasons, which include: (1) whether defendant's crime was an aberration; (2) whether he contributed significantly to society; (3) whether the nature of the crime is sufficiently dissimilar to others in the same category of crimes identified by the statute; (4) the length of the sentence; (5) whether there were circumstances that would "render the hardships of prison unusually harsh for a particular defendant;" (6) the benefit of an "uninterrupted course of treatment;" and (7) the effect of incarceration on the defendant's physical or mental health based on his characteristics. U.S. v. Garcia, 340 F.3d 1013, 1019-20. Nevertheless, "[h]ardships that commonly result from imprisonment do not meet the standard." Id. at 1022. Instead, the "general rule must remain that conviction for a covered offense entails immediate incarceration." Id.

Wetselaar has failed to demonstrate exceptional circumstances that would warrant release pending sentencing. Instead, he cites to various medical episodes he experienced pre-trial and during the trial, and reiterates the findings of several doctors. Medical issues are not unusual or unexpected given Wetselaar's age. Further, he has failed to provide any information that the treatment he is receiving in custody is insufficient, nor has he identified a need for specialized treatment that is unavailable while he is in custody. Instead, Wetselaar moves for his release because he is of advanced age, and according to him, one of the oldest federal defendants. Such assertions do not

constitute exceptional circumstances. Wetselaar's recounting of the findings by various doctors is equally unconvincing. In sum, the findings of various doctors is that Wetselaar is of advanced age and has conditions consistent with his age. These findings are far from exceptional, but rather, expected. Therefore, the Court denies Defendant Henri Wetselaar's Motion for Release Pending Sentencing (#458).

**II. Motion for Acquittal**

Rule 29 authorizes a court to set aside a guilty verdict and enter an acquittal if the evidence introduced at trial was insufficient to sustain a conviction. Fed. R. Crim. P. 29(a); United States v. Shetler, 665 F.3d 1150, 1163 (9th Cir. 2011). The Court must review the evidence in a light most favorable to the Government. United States v. Ching Tang Lo, 447 F.3d 1212, 1221 (9th Cir. 2006). A Rule 29 motion must be denied if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Nevils, 598 F.3d 1158, 1163–64 (9th Cir. 2010).

Defendant Wetselaar's argument, to which Defendant Litwin joins, is one sentence long. He alleges that because the testimony of Dr. Sanford Epstein, the Defendant's expert, contradicted that of the Government's expert there was insufficient evidence to sustain the conviction. (#464 at 2). However, the correct standard requires the Court to review the evidence in the light most favorable to the Government. United States v. Ching Tang Lo, 447 F.3d 1212, 1221 (9th Cir. 2006).

In order to prove that a physician violated 21 U.S.C. § 841 (drug distribution), the Government must prove that a prescription was not written for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. 21 C.F.R. § 1306.04. During trial, the Government introduced the testimony of an expert witness, Dr. Steven Richeimer, to opine on the propriety of Wetselaar's prescription practices. Richeimer testified that Wetselaar's prescriptions were not written for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. This testimony alone is sufficient to overcome a Rule 29 Motion. Therefore, the Court denies Defendant's Motion for Acquittal (#463).

///

### III. Motion for New Trial

Motions for a new trial are governed by Federal Rule of Criminal Procedure 33, which allows a court to grant a new trial "if the interests of justice so require." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992). "A motion for a new trial is directed to the discretion of the district judge. It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (internal citations removed). The defendant has the burden to justify the need for a new trial. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986).

**A. Evidence Related to Patient Deaths**

First, Wetselaar, joined by Litwin, claims that the Court should not have allowed the Government to introduce evidence, specifically a Nevada State Board of Pharmacy (NSBP) complaint, related to several patients who died while under his care. The Government's response in opposition to Wetselaar's motion in limine (#200) stated that the prosecution would not introduce any evidence related to patient deaths during its case in chief. (#267). The Court accordingly denied this specific issue as moot. Consistent with its response, the Government did not introduce this evidence during its case in chief. However, during the cross examination of Wetselaar (and after several side-bars with the Court), the Government asked him if he was familiar with a complaint made to the NSBP. This line of questioning occurred after defense counsel opened the door for questioning about the complaint. Specifically, Wetselaar testified, on direct examination, about his alleged good faith and utmost care of his patients. On cross-examination, Wetselaar denied knowledge of deaths, except for one, and the Government did not introduce the NSBP complaint into evidence. Thus, consistent with its response to this specific issue, the Government questioned Dr. Wetselaar about the document only during cross-examination and did not produce any other evidence of patient deaths during trial.

1   Defendant Wetselaar, rather indolently, points to the "pleadings set forth below" – the
2   exhibits filed in conjunction with the present Motion – to support and renew his argument that the
3   Court should not have allowed the Government to question him on cross-examination about patient
4   deaths.  He cites Rules 401-404 as the basis for this argument. Although the Court found this issue to
5   be moot, regarding the merits of Wetselaar's renewed argument, the Court finds the probative value
6   of this evidence outweighs its prejudicial value.

7   Evidence of the NSBP complaint is relevant to show Wetselaar was on notice that
8   indiscriminately distributing large quantities of addictive drugs could result in death. See United
9   States v. Blanton, 730 F.2d 1425, 1432 (11th Cir. 1984) (evidence of deaths "was relevant to the
10  attitude defendant displayed toward the substances he dispensed"); see also United States v.
11  Schuster, 777 F.2d 264, 270 (5th Cir.), vacated, remanded and appeal dismissed on other grounds,
12  778 F.2d 1132 (5th Cir. 1985) (in case brought against physician for illegal distribution of controlled
13  substances, court found no reversible error from limited evidence of patient deaths; court "observe[d]
14  that in a proper setting, such evidence might be relevant and admissible as indicative of a cavalier
15  attitude toward drugs dispensed and the consequences of their []use").

16  The motion for a new trial is denied, because the Government did not attempt to introduce the
17  evidence of patient deaths in its case-in-chief, Wetselaar opened the door to cross-examination
18  regarding patient deaths, the NSBP complaint was never introduced into evidence, and the probative
19  value of the NSBP complaint outweighs any prejudicial value,.

20  **B. Curative Instruction and Introduction of Extrinsic Evidence of Jason Kutz**

21  Next, Wetselaar, joined by Litwin, argues that the Court should have provided a curative
22  instruction and permitted him to introduce extrinsic evidence for impeachment purposes during the
23  testimony of Government witness, Jason Kutz. During trial, Wetselaar attempted to introduce
24  evidence of Kutz's plea agreement and the cooperation clause it contained.

25  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not
26  cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (internal quotation marks omitted). Confrontation Clause violations are subject to harmless error analysis. United States v. Orellana–Blanco, 294 F.3d 1143, 1148 (9th Cir. 2002). The right to confront witnesses serves three purposes. First, it ensures reliability by requiring the witness to make statements under oath. California v. Green, 399 U.S. 149, 158 (1970). Second, it submits the witness to cross-examination, which lends itself to the third purpose, which is to allow the jury to assess the witness's credibility. Id. The right to confrontation promotes both the reliability of criminal trials and the perception of fairness in the criminal justice system. Lee v. Illinois, 476 U.S. 530, 540 (1986).

A district court has considerable discretion in restricting cross-examination of a witness. See United States v. Jenkins, 884 F.2d 433, 435–36 (9th Cir.1989). The Ninth Circuit will find error only when that discretion has been abused. Id. In order for limitation of cross-examination to violate the Confrontation Clause, the limitation must have affected relevant testimony and must have resulted in prejudice to the defendant. United States v. Shabani, 48 F.3d 401, 403 (9th Cir.1995); see also Van Arsdall, 475 U.S. at 681- 684 (holding no error will occur unless cross-examination is restricted to an area of critical importance and the denial of cross-examination was prejudicial). The limitation must have denied the jury the opportunity to gather "sufficient information to appraise the biases and motivations of the witness." Jenkins, 884 F.2d at 436 (quoting United States v. McClintock, 748 F.2d 1278, 1290 (9th Cir.1984)).

Wetselaar cites no rule or legal authority to support his request for a curative instruction and for the introduction of extrinsic evidence to impeach Kutz. In fact, Federal Rule of Evidence 608(b) specifically prohibits the introduction of extrinsic evidence for impeachment purposes. Fed.R.Evid. 608(b); see also United States v. Castillo, 181 F.3d 1129, 1129 (9th Cir. 1999). Wetselaar requested only portions of the plea agreement be introduced, instead of the entire document. Allowing the introduction of portions of the plea agreement would only serve to mislead the jury. As such, his request for admission of part of the Kutz's plea agreement was denied.

As revealed by the transcript (#424; hereinafter identified as "T") of Jason Kutz's testimony, the witness was extensively cross-examined. All three Defendants inquired about Kutz's criminal conduct at and around the times relevant to this case. See T. at pg. 26 (possessing methamphetamine); 27 (admitting to pleading guilty to conspiracy to distribute opiods); 55-56, 56-59 (fake ID scam); 33, 74 (stating he was not involved in a fake ID scam, but aware of it); 51 (possessing Roxicodone on the day he was arrested and learning from law enforcement he was also in possession of methamphetamine); 52 and 60 (drugs at his house, including Fentanyl); 56, 67 (questioned about fake prescriptions); 80 (admitting involved in a fake tax return scheme).

Additionally, he was impeached about his lack of memory. T. at pg. 27 (admitting about lying to law enforcement to make himself look better); 29 (asking if he recalled telling law enforcement he had to show photo ID to pick up prescriptions and not remembering telling law enforcement certain details); 34-41, 50 (lack of memory about what doctors and/or pharmacies he got opioids from); 53 (not remembering how many times he visited Wetselaar and Litwin's office). He was also questioned about his drug addiction. T. at 29 (Kutz admitting that being "high" all the time could have impacted his memory); 34-41 (obtaining drugs from a number of doctors between 2005-2009). Kutz was also questioned about his motivation for speaking with law enforcement. See T. at 27-28 (Kutz agreeing that he did not receive a benefit for being a Government witness).

The Court offered Wetselaar's counsel the opportunity to ask the witness additional questions regarding the maximum sentence Kutz could have received for the crime to which he pleaded guilty (see T. at 66). However, he failed to do so. By doing so, the Court firmly observed the long held Ninth Circuit policy calling for "[f]ull disclosure of all relevant information concerning [adverse witnesses'] past record and activities through cross-examination …" United States v. Lo, 231 F.3d 471, 482 (9th Cir. 2000), holding modified by United States v. Larson, 495 F.3d 1094 (9th Cir. 2007), citing United States v. Brooke, 4 F.3d 1480, 1489 (9th Cir.1993).

Despite the extensive cross-examinations by the three defense attorneys, Wetselaar and Litwin both argue that they were improperly restricted from cross-examining Kutz about whether or

not he entered into a cooperation agreement with the Government. The Court limited cross-examination of Kutz regarding the line of questioning related to any additional crimes with which Kutz potentially could have been charged. There was no evidence that the witness had any idea of any additional crimes with which he could have been charged, much less what the Government wanted to charge him with, and even less, why the Government chose to resolve Kutz's case with a plea to a conspiracy charge. Stated otherwise, this line of questioning would require speculation and conjecture by the witness, and further, would delve into collateral matters regarding the state of mind of the prosecutor(s) who handled that case.

The Government contends that Defendants' line of questioning regarding the "cooperation" clause in Kutz's plea agreement was both misleading and confusing for the jury. According to the Government, at the time Kutz signed his plea agreement, he did agree to cooperate with the United States in the hopes that he might receive a reduction of his sentence. See United States v. Jason Kutz, Case No. 2:10-cr-00598-LDG-PAL at #40. If Kutz had still been in custody, or on supervised release, questions about his cooperation agreement would be relevant to show potential bias or motivation to lie, because he potentially could have cooperated for the purposes of gaining a benefit. However, because the witness had already served his entire sentence of approximately five years in prison and three years of supervised release, there is no plausible basis for bias or motivation to lie. See T. at 5-6 (discussing the witness serving 50 of 57 months and serving three years of supervised release). Despite the cooperation clause in his plea agreement, the Government contends that Kutz received no benefit for his testimony. Id. Instead, according to Kutz's testimony, he was testifying because he received a subpoena. Which is precisely why the Court repeatedly advised Defendants Wetselaar and Litwin that the line of questioning regarding the cooperation clause was misleading:

> THE COURT: Because you're implying that he's getting some benefit for his testimony today. That's exactly what that is –
>
> MR. SETNESS: No.
>
> THE COURT: -- and it's irrelevant.

> MR. SETNESS: But the witness testified on direct, Your Honor, "I did not agree to cooperate." That was –
>
> THE COURT: You already pointed that out. You already pointed that out that there was a clause in there that said "cooperation." You've tried to take it further than that and that's when I stopped you. And you're not going any further on it –
>
> MR. SETNESS: Yes, Your Honor.
>
> THE COURT: -- because that's my ruling.

T. at 78-79. See also T. at 45-46 (the Court advising defense counsel that there was no longer incentive for the witnesses to lie because their sentences, including supervised release were over). As the Court noted, counsel for Wetselaar advised the jury that there was a "cooperation" clause in his plea agreement during a speaking objection. The issue was his persistence in asking about the clause in order to suggest that the witness was still expecting a benefit for his cooperation; a benefit that, according to the Government, was an impossibility because he had completed his sentence. Compare Davis v. Alaska, 415 U.S. 308, 317–18 (1974) (important for jury to know of witness' vulnerable status as a probationer and possible bias, based on an inference of undue pressure from prosecution); Alford v. United States, 282 U.S. 687, 693 (1931) (that the witness was in custody of federal authorities could show bias based on promise or expectation of immunity or coercive effect of detention).

Further, during trial, Litwin asserted that he was not provided an opportunity to cross-examine Kutz regarding his proffer statements. Specifically, Defendant Litwin argued that he hoped to establish that "Kutz was motivated to obtain a favorable Plea Memorandum from the United States and that any future testimony would be based upon these proffers that resulted into [sic] entering a Plea Memorandum." (#416 at 3). There is nothing in the record to support his argument. The Court specifically limited the Defendants from cross-examining the witness on facts and issues that would mislead or confuse the jury. Defendants were not prohibited from discussing the witness's proffer statements and impeaching him accordingly. Litwin's dissatisfaction in making this argument

///

by way of his cross-examination of Kutz does not mean the Court improperly limited cross-examination.

Litwin also claimed he should have been able to ask Kutz about the provision of his plea memorandum that advised Kutz that he is subject to prosecution for certain federal offenses, including perjury and obstruction of justice. (#416 at 3). Again, Litwin fails to demonstrate how this line of questioning is relevant to the witness's alleged motivation to lie or potential bias. Therefore, the Court, again rejects this argument and **denies** the motion for a new trial.

### C. Disclosure of NSBP Complaint

Wetselaar, joined by Litwin, renews the argument that the Court should not have permitted the Government to utilize the NSBP complaint during the cross-examination of Wetselaar as it had not previously been disclosed to defense counsel, constituting a violation of Rule 16(a)(1)(E)(i) and (iii). Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure states, in pertinent part:

> . . . the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Defendants contend that they did not receive the same copy of the first page of the NSBP complaint as the one in the Government's possession. The Government's copy of the NSBP complaint merely included the sentence: "This is a copy I sent to Nevada State Board of Pharmacy." Defendants' copy did not. According to Defendants, this copy of the NSBP complaint was not sufficient as it was not the exact version that the Government possessed, however, Defendants fail to point to any source to support this assertion. Additionally, by filing a motion in limine during trial to prevent the introduction of the evidence of patient deaths, it is apparent that Defendants were aware of and in possession of the NSBP complaint. Defendants received copies of documents which were Bates

Stamped LAM_018381 through LAM_018410. The Government contends that claims that the Defendants were not provided copies of the documents are simply untrue.

Further, Defendants allege that the Government failed to specify where the NSBP complaint was located when it was obtained. The Government argues it is under no obligation to tell Defendants where documents were located, but rather provide copies of the documents. See Fed. R. Crim. P. Rule 16(a)(1)(E)(i) and (iii). Even if the document had not been located in Dr. Wetselaar's desk, this likely would not have affected Wetselaar's testimony regarding patient deaths. The Government could have inquired of Wetselaar whether and when he was notified that his patients died (in early 2010) from overdoses, and what, if any, remedial measures he took to prevent further overdoses. Thus, the Court denies the motion for a new trial.

**D. Dismissal of Juror**

Finally, Defendants argue that they are entitled to a new trial, because during jury deliberations, the Court dismissed a juror due to the juror's refusal to deliberate. The excuse of a juror under Rule 23(b) is reviewed for abuse of discretion and must be affirmed unless an appellate court is left with the definite and firm conviction that the trial court committed a clear error of judgment. United States v. Beard, 161 F.3d 1190, 1193-94 (9th Cir. 1998). Underlying factual findings are reviewed for clear error. United States v. Vartanian, 476 F.3d 1095, 1098 (9th Cir. 2007). A defendant carries a "significant burden" to show that the court abused its discretion in denying a new-trial motion. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986).

Federal Rule of Criminal Procedure 23(b) provides that courts may excuse jurors "for just cause" after the jury begins deliberations. A juror may not be dismissed "if the record evidence discloses any reasonable possibility that the impetus for [the] juror's dismissal stems from the juror's views on the merits of the case." United States v. Symington, 195 F.3d 1080, 1087 (9th Cir. 1999).

Here, the Court found just cause to dismiss the juror because: (1) the juror refused to deliberate and; (2) the Court was concerned that the juror harbored at least some level of malice toward the judicial process and might not have been completely forthcoming with the Court due to

the Court's refusal to dismiss the juror during jury selection. Both grounds are amply supported by the record. Either ground independently sustains the Court's action.

The Court acted within its discretion in questioning the juror and others in response to a juror note received after deliberations began. See United States v. Boone, 458 F.3d 321, 329 (3d Cir. 2006) (where credible allegations of jury nullification or refusal to deliberate arise during deliberations, court may, within its discretion, investigate through questioning or other appropriate means); Dyer v. Calderon, 151 F.3d 970, 974 (1998) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances."). The note raised legitimate concerns that the juror was refusing to deliberate and was unwilling or unable to participate in rational discussions regarding the evidence and legal standard.

In United States v. Egbuniwe, 969 F.2d 757 (9th Cir. 1992), the court excused a juror based on its determination that the juror could not be fair or impartial after being informed during deliberations of alleged police misconduct involving his girlfriend. The Ninth Circuit held it was not error to fail to ask the juror if he could be fair and impartial: because "[a] trial judge is required to make an independent assessment of a juror's ability to render a fair and impartial verdict," "[a] juror's assurance that he or she can render a fair and impartial verdict is not dispositive." Id. at 762. The court further held that findings of the juror's "defensive demeanor and failure to be forthcoming" in response to the court's inquiries constituted just cause to remove the juror. Id. at 763; see Beard, 161 F.3d at 1193-94 (affirming dismissal of two jurors due to their inability to properly deliberate after they got into disputes with each other, even though jurors said they could deliberate).

Just cause exists for dismissing a juror under Rule 23(b) when the court determines the juror is unable to deliberate impartially. Symington, 195 F.3d at 1085. Here, the record amply supports this factual finding as to the dismissed juror, providing an independent basis for the juror's dismissal. Unlike Symington, this was not a situation where the jury had deliberated for several days and the other jurors were possibly trying to pressure the dissenting juror into submission. Id. at 1083-85.

12

Here, other jurors sent the Court a note regarding their stalled deliberations due to one juror just hours after the jury retired to deliberate. See United States v. Christensen, 828 F.3d 763 (2015). The jurors expressed frustration that this juror was unwilling to deliberate and had made up her mind prior to any deliberations. The Court then questioned two jurors other than the dismissed juror. Those jurors consistently articulated that the juror had made up her mind prior to beginning deliberations and had not engaged in the deliberative process.

The Court questioned the juror in question regarding her alleged refusal to deliberate:

> THE COURT: [Y]ou made a statement, as soon as the jury sat down, after being given the directive to commence deliberations, that no matter what, you will not change your mind. Did you make that statement?
>
> JUROR NO. 5: I did. And if I may have the - -
>
> THE COURT: Hold on a minute. How many times did you make that statement in the course of the deliberation?
>
> JUROR NO. 5: It's over like five hours now, Your Honor.
>
> THE COURT: It was - - it was about three when we first started this. About three hours. How many times?
>
> JUROR NO. 5: I probably would have said it three times.
>
> THE COURT: Three times?
>
> JUROR NO. 5: Two to three times.
>
> THE COURT: So, no matter what, you would not change your mind?
>
> JUROR NO. 5: No, Your Honor.

TRANSCRIPT of Proceedings at p. 30-31, Docket No. 489, Jury Trial Date March 22, 2017.

The Court also made a record regarding the juror's unhappiness when she was not dismissed from the jury following jury selection. On the second day of trial, the juror informed the courtroom administrator that she could not serve because she would only be paid by her employer (a law firm) for two weeks of jury service and that she had assignments that she needed to complete at work. The Court refused to dismiss the juror on these grounds and the juror told the Court that she had been

leaving the trial and going to work at night.[1] The Court made a thorough record of the juror's dissatisfaction with this situation. Additionally, the Court never inquired of any of the jurors what the dismissed juror's position was regarding guilt or innocence. To the contrary, the Court cautioned the jurors only to discuss the willingness to deliberate, not the jurors' opinions of guilt or innocence.

Based on the Court's questioning of the jurors, the Court concluded that the dismissed juror was unable or unwilling to deliberate and perform her duties. This finding is supported by the record. The Court properly inquired about the issues with the juror, and further, was careful not to discuss the merits of the case with the juror. Further, the Court confined its dismissal of the juror to her unwillingness to deliberate and her potential malice toward the judicial process. See Christensen at 811. Accordingly, Defendants' motion for a new trial based on the dismissal of the juror is denied.

**IV. Motion for Hearing**

Wetselaar contests the forfeiture and thus requests that the Court conduct a hearing pursuant to Rule 32.2(b)(1)(B) of the Federal Rule of Criminal Procedure to allow the presentation of evidence and argument on this matter.

Rule 32.2(b) states, in pertinent part, as follows:

> (b) Entering a Preliminary Order of Forfeiture.
>
> (1) Forfeiture Phase of the Trial.
>
> > (A) Forfeiture Determinations. As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.
> >
> > (B) Evidence and Hearing. The court's determination may be based on evidence already in the record, including any written plea agreement,

---

[1] Note the Court implemented an abbreviated trial schedule due to Wetselaar's health. Trial was held four days a week and each trial day concluded at 1:00 pm.

14

and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

The Court will address the merits of Wetselaar's Motion for Hearing (#485) and Litwin and Wetselaar's Joint Motion for Return of Property (#460) during the scheduled Sentencing hearing.

**V. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendant Henri Wetselaar's Motion for Release Pending Sentencing (#458) and Defendant Wetselaar and Defendant Litwin's, Motion for Acquittal, or in the Alternative, Motion for New Trial (#463) are **DENIED**.

IT IS FURTHER ORDERED that Wetselaar's Motion for Hearing (#485) and Litwin and Wetselaar's Joint Motion for Return of Property (#460) will be addressed at Defendants' scheduled sentencing hearing.

DATED this 2nd day of June 2017

_____
Kent J. Dawson
United States District Judge